THE MARINE BANK OF BUFFALO, Respondent, *v.* JOSIAH M. FISKE et al., Appellants.

The owner of property, which has been tortiously taken from him, is not estopped from reclaiming it by the fraudulent act of the tortious taker to which he was not a party, and which he in no way aided; to create an estoppel, he must have enabled the wrong-doer to perpetrate the fraud.

Plaintiff discounted the note of N. upon transfer to it, as security, of the bill of lading of a cargo of wheat, shipped at Chicago, owned by and consigned to N. at Buffalo; while the wheat was in transit to Buffalo defendants accepted and paid drafts of N. upon transfer of false bills of lading of wheat, purporting to have been shipped by N. at Buffalo on board of certain canal boats named, consigned to defendants at New York, no

wheat in fact having been shipped. Upon arrival of the wheat at Buffalo, N., without consent or knowledge of plaintiff, caused it to be shipped on board the canal boats named in the false bills of lading, and to be transported and delivered to defendants at New York, who refused to deliver the same to plaintiff on demand, and afterwards sold it. In an action for conversion, *held,* that defendants were liable; that plaintiff was special owner and in possession of the wheat by virtue of the transfer of the bill of lading; that the general owner had no right to the possession, disposal or control of the wheat, any possession obtained or dominion exercised by him, without plaintiff's assent, was tortious, and he could transfer no title; that as plaintiff had not clothed N. or the pretended canal carriers with the apparent title to, or authority to dispose of the wheat, or in any way aided or facilitated in the fraud perpetrated upon defendants, it was not estopped from reclaiming its property.

Also, *held,* that the fact that there was a small quantity of wheat upon the canal boats to which the plaintiff was not entitled, and that the demand was for the whole, did not defeat its right to recover, as the refusal was upon the ground that no part of the wheat belonged to plaintiff, and as there was an actual conversion by a sale.

*Rowley* v. *Bigelow* (12 Pick., 307) distinguished.

(Argued November 22 1877; decided December 4, 1877.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, affirming a judgment in favor of plaintiff entered upon the report of a referee. (Reported below, 9 Hun, 363.)

This was an action to recover for the alleged conversion of a quantity of wheat.

On the 9th of November, 1871, Messrs. Nichols, Gibson & Helmer, of Chicago, purchased for "O. L. Nims, agent," 14,330 50-60 bushels of No. 3 Chicago wheat. On the same day they caused it to be shipped on the propeller Empire State at Chicago for Buffalo, under a bill of lading in the usual form, by which it was agreed to deliver such wheat at Buffalo, for the account of said Nichols, Gibson & Helmer, in the care of Nims, or to his or their assigns or consignees. On the same day, for the purpose of raising money to pay for the grain, Nichols, Gibson & Helmer drew their draft on Nims, to the order of the cashier of the Third National Bank of Chicago, $17,329.25, and obtained the discount of such draft

from said bank upon the security of the bill of lading, which they indorsed and transferred as collateral. This draft the bank transmitted, together with the bill of lading attached thereto, to the plaintiff for collection. On the eleventh of the same month, Nims applied to the plaintiff for a loan of $17,300, for ten days, in order to meet this draft, and the plaintiff thereupon discounted his note for that amount, bearing that date, and payable to the order of said firm ten days from date. At the same time, to secure the payment of the note, Nims indorsed and transferred said bill of lading to the plaintiff. On the fourteenth of November, Nims obtained from Amos A. Bissell two bills of lading, bearing that date, signed by Bissell for the firm of A. A. Bissell & Co., of which he was a member, and who were carriers of property on the canals, one of which certified that O. L. Nims, agent, had shipped on that day, on board the canal boat H. B. Littlefield, 7,600 bushels of No. 2 Milwaukee wheat, to be carried to the city of New York, and there delivered to the defendants on account of said O. L. Nims, agent. The other was in similar form, and expressed the receipt of 7,400 bushels of No. 2 Milwaukee wheat on board the canal boat Hattie Eliza. These bills were false. On the same day, Nims drew sight drafts upon the defendants, who were partners in the grain and commission business at New York, under the firm-name of J. M. Fiske & Co. one for $9,500, directing the drawees to pay and charge the same to the account of boat H. B. Littlefield, another for $9,250 on account of the boat Hattie Eliza; he attached the drafts to the false bills of lading, and caused them, with the bills so attached, to be presented to the drawees for payment, and they did, relying on the security of said bills, pay said drafts on the sixteenth of November. The propeller arrived at Buffalo on the sixteenth of November, after two o'clock P. M., and on the next day discharged her cargo into the Niagara Elevator. On the same day Nims, without the knowledge or consent of the plaintiff, caused 7,400 bushels of the grain to be loaded on the Hattie Eliza, and 6,826 26-60 bushels

upon the H. B. Littlefield, and caused the same to be trans-
ported to New York and there delivered to the defendants,
who received the same, supposing it to be covered by the
bills of lading upon the security of which they had paid the
sight drafts aforesaid. On said canal boats there was also
shipped 773 34-60 bushels of wheat, in order to fill said bills,
upon which the plaintiff had no claim. Plaintiff subsequently
demanded the cargoes which defendants refused to deliver
and thereafter sold them.

*Wm. H. Greene*, for appellants. The demand made by
plaintiff of defendants for the wheat being too large, the
action for that reason must fail. (*Abington* v. *Lipscomb*, 1
Ad. & El. [N. S.], 776; 1 Gale & D., 230; 10 Law Journal,
230; Archb. N. P., 458; *Gillett* v. *Roberts*, 57 N. Y., 28;
*Ross* v. *Mathers*, 51 id., 108; 61 id., 583.) Defendants'
title to the wheat is good and valid by force of the factors,
act. (Laws 1830, chap. 179, p. 203; *Dows* v. *Greene*, 24
N. Y., 638; 32 Barb., 490; *Rawles* v. *Seymour*, 3 Keyes,
572; *M. & T. Bk.* v. *F. & M. Nat. Bk.*, 60 N. Y., 40;
*Howland* v. *Woodruff*, id., 73; *First Nat. Bk. of Toledo* v.
*Shaw*, id., 283.) Plaintiff's acts amounted to a consent
that Nims should receive and take possession as he did.
(*Hazard* v. *Abel*, 15 Abb. [N. S.], 413; *Ont. Bk.* v. *N. J.
St. Co.*, 58 N. Y., 510; *Rawley* v. *Bigelow*, 12 Pick., 307.)

*Sherman S. Rogers*, for respondent. Plaintiff established
in itself *prima facie* a special property in the grain to the
extent of the advances made by it. (*M. & T. Bk.* v. *F. &
M. Bk.*, 60 N. Y., 40; *City Bk. of Rochester* v. *Jones*, 4
id., 497; *City Bk. of Rome* v. *R. & W. R. R. Co.*, 44 id.,
136.) Defendants acquired no rights in the grain by virtue
of the advances made by them on the bills of lading of the
canal boats. (*Barnard* v. *Campbell*, 55 N. Y., 456; 65
Barb., 286; *De Voe* v. *Brandt*, 53 N. Y., 462.)

ALLEN, J. At the time of the fabrication of the false bills of
lading of wheat purporting to have been shipped by Nims at

Buffalo on board the canal boats, Hattie Eliza and Littlefield, consigned to the defendants at New York for account of Nims, and the acceptance and payment by the defendants of the drafts drawn by Nims against the supposed cargoes, the wheat which is the subject of this action was on board the Empire State in transit between Milwaukee and Buffalo, under the bill of lading which had been transferred to the plaintiff as a security for the payment of the note of Nims, discounted to enable the latter to pay the draft drawn on him, against and for the purchase-price of the wheat. The plaintiff was the pledgee and special owner of the wheat, and in the possession thereof, the possession of the carrier being the possession of the plaintiff, the special owner, and the assignee of the bill of lading. The general owner had not the possession, or the right to the possession, or to dispose of or control the wheat. Any possession which he might obtain, or dominion he might exercise over the wheat without the assent of the plaintiff, would have been tortious, and he could transfer no title to another. (*Dows* v. *Nat. Ex. Bk. of Milwaukee*, 91 U. S. Rep., 618; *Jenkyns* v. *Brown*, 14 Q. B., 496; *City Bk. of Rochester* v. *Jones*, 4 Comst., 497.) The defendants, therefore, did not make their advances on the security of the wheat now claimed by the plaintiff, but upon false and simulated bills of lading representing and covering no merchandise and the fraudulent representations of Nims, the alleged shipper, and Bissell & Co., the pretended carriers and boat owners. The bills of lading represented no value, and were of no more significance as affecting the property of innocent persons, strangers to the transaction, than if the canal boats named had not been in existence, and the pretended boat owners had been myths, or their names had been forged. The plaintiff was no party to the fraudulent transaction, and in no way facilitated the perpetration of the fraud upon the defendants, or by any act or declaration gave colorable validity to the pledge of any wheat, or to the right or authority of Nims to make title to the wheat specified in the bills of lading. The owner of property tortiously

taken from him is not estopped from reclaiming it by the fraudulent act of the tortious taker, to which he is not a party, or by a fraud and deception in which he has not participated, and which he has not in any way facilitated or aided. The plaintiff had not clothed Nims or the pretended carriers with the apparent title to or authority to dispose of the wheat then laden and being on board the Empire State, subject to the bill of lading then owned by it and in its possession; and as there was no such apparent authority in Nims at the time the defendants made their advances, there can be no estoppel of the plaintiff from reclaiming its property subsequently delivered to the defendants by Nims without authority, the defendants not parting with value upon the faith of such delivery. (*Barnard* v. *Campbell*, 55 N. Y., 456.) The owner of merchandise must have done some act by which another is clothed with the apparent *jus disponendi*, in order to create an estoppel upon his rights; some act which will operate as a fraud upon innocent persons dealing with the individual having the apparent right of disposal, if the true title is asserted. In other words, he must have enabled the wrong-doer to perpetrate the fraud.

Had the wheat of the plaintiff been actually trans-shipped from the propeller to the canal boats under circumstances connecting the plaintiff with such trans-shipment before advances were made by the defendants, other questions would have arisen similar to those passed upon in *Rowley* v. *Bigelow* (12 Pick., 307). In that case the bill of lading had been given before the shipment of the corn, which at that time was owned and in possession of the plaintiff. But before the defendants accepted the draft drawn upon them against the shipment, the corn was actually on board the vessel, and the court held, that having been shipped as and for the corn embraced in the bill of lading, the bill of lading would, as against the master and owner of the vessel, operate on such corn by way of relation and estoppel, and the plaintiffs having parted with the possession of the corn and delivered it on board the vessel designated by the fraudulent purchaser under circum-

stances terminating the right of stoppage *in transitu* as against a *bona fide* purchaser, the consignee accepting drafts on the faith of such consignment acquired a valid title to the corn as against the true owner. The elements of estoppel existing in that case are wanting in this. The defendants here did not acquire a title to the wheat in controversy by an advance made upon a spurious bill of lading, while yet the wheat was in the actual possession of the plaintiff, the true owner, and a subsequent fraudulent and unauthorized shipment of the wheat, as and for the wheat mentioned in the bill of lading could not and did not operate by relation and estoppel to cut off the title of the owner not assenting to, or authorizing the shipment.

It is not necessary to consider the other interesting questions discussed by the learned counsel for the defendants, as the facts stated are conclusive against the claim of title by the defendants as against the plaintiff. The demand upon, and the refusal by the defendants to deliver the wheat were evidence of a conversion. The demand was general, and embraced the entire cargo of both canal boats, including a few hundred bushels of wheat to which the plaintiffs were not entitled. The refusal, however, proceeded on the ground that no part of the wheat belonged to the plaintiff, and clearly imported that the defendants would part with none of it.

*Abington* v. *Lipcomb* (1 Ad. & E. [N. S.], 776), passed off on the ground that no title to any particular five of the seven beasts demanded as heriots were shown to have been lawfully seized as such, and not on the ground that the demand was too large.

But there was an actual conversion of the wheat by a sale thereof by the defendants.

The judgment must be affirmed.

All concur.

Judgment affirmed.